**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Criminal Action No. 23-cr-00375-NYW-2

UNITED STATES OF AMERICA,

Plaintiff,

v.

2. CURRON TERRIER JONES,

Defendant.

---

**ORDER ON MOTION TO SUPPRESS**

---

Defendant Curron Terrier Jones ("Defendant" or "Mr. Jones") was charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) after a firearm was found in his backpack during an encounter with police. [Doc. 1; Doc. 22 at 3]. He now moves to suppress the firearm on the basis that his Fourth Amendment rights were violated during the stop and the search. [Doc. 22 (the "Motion to Suppress")]. The Government opposes the Motion to Suppress. [Doc. 25]. The Court held an evidentiary hearing on April 9, 2024. [Doc. 32]. For the reasons set forth in this Order, the Motion to Suppress is respectfully **GRANTED**.

**BACKGROUND**

On August 1, 2023, Denver Police Department ("DPD") officers set up surveillance on Delorean Louis Speaks ("Mr. Speaks") for purposes of executing an arrest warrant. [Ex. 1, Doc. 25-1 at 2].[1] Officers observed Mr. Speaks exit a home with Mr. Jones, who

[1] At the evidentiary hearing, the Court admitted ten exhibits, each of which was previously filed on the docket in conjunction with the Parties' briefing. When citing to an exhibit for

was wearing a backpack. [Ex. 4, Doc. 25-4 at 2]. As officers approached the men, DPD Detective Rhoderic Patrick ("Detective Patrick") observed Mr. Speaks remove an object from his waistband and toss it into nearby bushes. [Doc. 25-1 at 3].[2] Detective Patrick "grabbed [a]hold" of Mr. Jones and placed him, with his backpack still on, in handcuffs "for safety reasons," as it was unknown whether Mr. Jones was armed. [Doc. 25-1 at 3; Ex. 9, Doc. 22-1 at 13:31:28–13:31:51].[3] Mr. Speaks was arrested, [Doc. 25-2 at 2], and was led away by an officer to a spot approximately 30 feet from where Mr. Jones stood, [Doc. 22-1 at 13:31:45–13:32:07; Hearing Tr. at 20:12–19].[4] Detective Patrick led Mr. Jones in another direction to a marked DPD vehicle. [Doc. 22-1 at 13:33:21–13:33:41].

Because the single pair of handcuffs was tight on Mr. Jones, officers re-cuffed him using two connected sets, removing Mr. Jones's backpack in the process and placing it on the ground. [Doc. 25-1 at 3; Doc. 22-1 at 13:34:01–13:35:00]. Detective Patrick observed that the backpack was heavy, [Hearing Tr. at 10:19–20], and that Mr. Jones was "very focused on his backpack with his eyes," [Doc. 25-1 at 3]. An officer told Mr. Jones that the officers were there for Mr. Speaks, not for him, that they "[weren't] even worried about [him] right now," and that he was "just being detained." [Doc. 22-1 at 13:34:22–13:34:31].

---

the first time, the Court will reference the exhibit number reflected in the Parties' joint Exhibit List, [Doc. 28], but will otherwise cite to each exhibit using the docket number assigned by the CM/ECF system.

[2] A subsequent search of the bushes yielded a handgun. [Ex. 2, Doc. 25-2 at 2].

[3] When citing to video evidence, the Court cites to the timestamp located on the top righthand corner of the frame.

[4] The Court cites to a preliminary nonpublic version of the evidentiary hearing transcript. Accordingly, there may be some variations with respect to page numbers, line numbers, or specific language should an official transcript be ordered and prepared.

Detective Patrick then handed Mr. Jones's backpack to DPD Officer Martinez ("Officer Martinez"). [Doc. 25-1 at 3; Doc. 22-1 at 13:35:35–13:35:45]. Officer Martinez asked, "Did you go through it yet?" and Detective Patrick answered no. [Doc. 22-1 at 13:35:39–13:35:44]. Detective Patrick told Officer Martinez that Mr. Jones was "worried about his bag," so they should "run him and make sure we're good." [*Id.* at 13:35:51–13:35:58]. Officer Martinez took the backpack, observed that it appeared empty but felt heavy, and placed it on the hood of an unmarked police vehicle approximately 15 feet away from where Mr. Jones remained handcuffed and flanked by DPD officers. [*Id.* at 13:36:01–13:36:30; Doc. 25-1 at 3; Hearing Tr. at 29:14–17].

Officer Martinez entered the unmarked vehicle to run Mr. Jones's name. [Ex. 10, Doc. 22-2 at 13:36:26–13:36:56; Hearing Tr. 35:19–36:4]. He asked Detective Patrick for Mr. Jones's name so he could run it, [Doc. 22-2 at 13:36:31–13:36:47], but Detective Patrick told him that "Chris is running it, he's got his I.D.," [Doc. 22-1 at 13:36:45–13:36:50].[5] Officer Martinez exited the car without running the name and put on a pair of gloves. [Doc. 22-2 at 13:36:26–13:37:42; Hearing Tr. at 36:3–7]. Meanwhile, Mr. Jones was frisked, [Doc. 22-1 at 13:36:50–13:37:07], and then placed in the back of a police car, [*id.* at 13:37:14–13:37:27].

Officer Martinez then searched Mr. Jones's backpack, without a warrant, and found a handgun. [Doc. 25-4 at 2; Doc. 22-2 at 13:36:56–13:38:24; Hearing Tr. 36:20–21]. He did not "frisk" the bag prior to opening it because "it was a thicker type of material" and he "wasn't able to manipulate it." [Hearing Tr. at 30:7–10]; *see also, e.g.*, [Doc. 22-2 at

[5] "Chris" was not identified at the evidentiary hearing or in the Parties' briefing. The Court notes that an Officer Christpher Cochran was present on the scene. *See* [Ex. 5, Doc. 25-5 at 2–3].

13:37:00]. At the evidentiary hearing, Officer Martinez testified that he searched the backpack because "we discovered that Mr. Jones did not have any active warrants, [so] we were going to give his possessions back to him." [Hearing Tr. at 30:13–18, 33:19–34:8]. He explained that it is standard DPD procedure to "do a protective sweep" prior to giving back a released detainee's possessions. [*Id.* at 30:14–18]. However, he later conceded that he did not run Mr. Jones's name prior to searching the bag. [*Id.* at 36:3–4].

Mr. Jones was placed under arrest, [Doc. 25-1 at 3], and on August 23, 2023, he was charged with a violation of 18 U.S.C. § 922(g)(1), [Doc. 1]. On February 2, 2024, Mr. Jones moved under the Fourth Amendment to suppress all evidence obtained during his encounter with police. [Doc. 22]. The Government opposes Mr. Jones's Motion, [Doc. 25], and Mr. Jones has filed a reply, [Doc. 27].

## LEGAL STANDARD

The Fourth Amendment to the United States Constitution "protects the people from unreasonable searches and seizures of 'their persons, houses, papers, and effects.'" *Soldal v. Cook Cnty.*, 506 U.S. 56, 62 (1992) (quoting U.S. Const. amend. IV). "For a search . . . to be reasonable, it must ordinarily be supported by a warrant based on probable cause," *United States v. Chavez*, 985 F.3d 1234, 1240 (10th Cir. 2021), and "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment," *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quotation omitted). A warrantless search "is reasonable only 'if it falls within a specific exception to the warrant requirement.'" *United States v. Kendall*, 14 F.4th 1116, 1121–22 (10th Cir. 2021) (quoting *United States v. Venezia*, 995 F.3d 1170,

1175 (10th Cir. 2021)). The reasonableness of a search is evaluated "on the basis of the facts as they existed at the time" of the search, *United States v. Jacobsen*, 466 U.S. 109, 115 (1984), and the Government bears the burden of demonstrating that an exception to the warrant requirement applies, *United States v. Chavez*, 985 F.3d 1234, 1240 (10th Cir. 2021).[6]

The "principal judicial remedy to deter Fourth Amendment violations" is the exclusionary rule, *Utah v. Strieff*, 579 U.S. 232, 237 (2016), which is a court-created doctrine "under which evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Knox*, 883 F.3d 1262, 1273 (10th Cir. 2018) (quotation omitted).

**ANALYSIS**

Mr. Jones argues that DPD officers violated his Fourth Amendment rights when they (1) detained him without reasonable suspicion, [Doc. 22 at 4–5], and (2) searched his backpack without a warrant, [*id.* at 6–11]. On these bases, he moves to suppress the firearm recovered from the backpack. [*Id.* at 11–12]. Upon review of the Parties' briefing, the testimony and arguments at the hearing, and all of the exhibits, the Court finds that the Government has not demonstrated that the warrantless search of Mr. Jones's bag falls within an enumerated exception to the warrant requirement and thus it has not demonstrated that the search was reasonable under the Fourth Amendment.

[6] A defendant moving to suppress evidence on Fourth Amendment principles bears an initial burden of "showing the Fourth Amendment was implicated," *United States v. Goebel*, 959 F.3d 1259, 1265 (10th Cir. 2020), and if the movant meets this burden, the burden shifts to the government to prove that officers' actions were justified, *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994). The Government does not dispute that this case implicates the Fourth Amendment. *See generally* [Doc. 25].

"A warrantless search by the police is invalid unless it falls within one of the narrow and well-delineated exceptions to the warrant requirement." *Flippo v. West Virginia*, 528 U.S. 11, 13 (1999). As mentioned above, the Government has the burden to show that an exception to the warrant requirement justified the search of Mr. Jones's bag. *Chavez*, 985 F.3d at 1240. The Government contends that the warrantless search of the bag was justified under *Terry v. Ohio* based on officers' reasonable suspicion that Mr. Jones was armed and dangerous. [Doc. 25 at 8; Hearing Tr. at 56:3–5, 57:10–14]. It also relies on *Michigan v. Long*, asserting that the principles articulated in *Long* concerning a protective search of a vehicle are equally applicable to a protective search of a bag. [Doc. 25 at 8–9; Hearing Tr. at 59:1–3]; *see also* [Hearing Tr. at 58:21–59:3 (Government counsel stating that the applicable warrant exception "is rooted in *Terry v. Ohio*" but is also "akin to a protective sweep . . . under *Michigan v. Long*")].

A *Terry* frisk is one recognized exception to the warrant requirement. *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993). During an investigative detention, if an officer reasonably concludes "that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous," the officer may "conduct a carefully limited search of the outer clothing of [a detainee] in an attempt to discover weapons which might be used to assault" the officer. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *see also United States v. Hammond*, 890 F.3d 901, 905 (10th Cir. 2018) (*Terry* permits a "limited protective search ('frisk')"). In *Michigan v. Long*, the Supreme Court extended *Terry* and held that

> the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from

> those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Michigan v. Long*, 463 U.S. 1032, 1049 (1983) (quoting *Terry*, 392 U.S. at 21). "In a sense, *Long* authorized a 'frisk' of an automobile for weapons." *Maryland v. Buie*, 494 U.S. 325, 332 (1990).

"Of course, the [Fourth] Amendment's ever-present reasonableness requirement places strict limits on the scope or nature of the frisk an officer may administer." *United States v. Rochin*, 662 F.3d 1272, 1273 (10th Cir. 2011). "[A] protective search—permitted without a warrant and on the basis of reasonable suspicion less than probable cause—must be strictly 'limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.'" *Dickerson*, 508 U.S. at 373 (quoting *Terry*, 392 U.S. at 26). Protective *Terry* searches are permissible "not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence," *Adams v. Williams*, 407 U.S. 143, 146 (1972), and the *Terry* justification for a search "cannot be stretched to cover situations where there is no realistic danger to officer safety." *United States v. Buster*, 26 F.4th 627, 635 (4th Cir. 2022). Indeed, the search for weapons "should be a limited intrusion." *United States v. Santillanes*, 848 F.2d 1103, 1109 (10th Cir. 1988).

The Government contends that the search of Mr. Jones's backpack was a lawful "protective search" under *Terry* based on officers' reasonable suspicion that he was armed and posed a danger to the officers. [Doc. 25 at 9]. However, this argument fails to account for the strictures of *Terry*, which permits a limited search only if the officer reasonably concludes "that the persons with whom he is dealing may be armed and *presently* dangerous." *Terry*, 392 U.S. at 30 (emphasis added). At the time police officers

searched Mr. Jones's bag, Mr. Jones was (1) handcuffed with his hands behind his back, [Doc. 22-1 at 13:34:50–13:35:02]; (2) approximately 15 feet away from his bag, [Doc. 22-2 at 13:37:28; Doc. 25-1 at 3]; and (3) directly surrounded by two police officers, [Doc. 22-1 at 13:36:50–13:37:24], before being placed in the backseat of a police car, [*id.* at 13:37:14–13:37:24]; *compare also* [Doc. 22-2 at 13:36:57 (Mr. Jones standing outside the open door of police car with officers)], *with* [*id.* at 13:37:21–13:37:25 (a police officer closing the car door)], *and* [*id.* at 13:37:27 (Mr. Jones no longer in sight)]. In other words, at the time police officers searched Mr. Jones's bag, Mr. Jones had no conceivable opportunity to be anywhere near his backpack, let alone exit the car, access his bag, open it, and grab the firearm.

To be sure, a permissible *Terry* frisk is not limited to "the person of the detained suspect," *Long*, 463 U.S. at 1047, and courts have recognized that a *Terry* frisk may, depending on the circumstances, include a frisk or search of a detainee's bag. *See, e.g.*, *United States v. Thomson*, 354 F.3d 1197, 1201 (10th Cir. 2003) (approving the search of detainee's bag where the detainee told officers that the bag, which was in the detainee's reach, contained a weapon); *United States v. Hernandez-Mendez*, 626 F.3d 203, 213 (4th Cir. 2010) (search of detainee's purse was objectively reasonable because the detainee "was wearing a tank top shirt and shorts" and "there were few places that she could conceal a weapon other than in her purse"); *United States v. Gist-Davis*, 41 F.4th 259, 265 (4th Cir. 2022) ("Because the officers had particularized information indicating that Gist-Davis likely was carrying a firearm in the fanny pack, which was attached to his body, the act of patting down that bag was within the scope of the initial detention."); *but see United States v. Wills*, 316 F. Supp. 3d 437, 445 (D.D.C. 2018)

("Absent exigent circumstances, a permissible [*Terry*] frisk of a bag or backpack must begin with an exterior pat-down of the bag or backpack; only if an officer plainly feels an item that is immediately recognizable as a weapon or other contraband may any further search or seizure be reasonable.").

*Terry* does not, however, automatically permit the search of a detainee's bag, particularly where the bag is completely inaccessible to the detainee. Indeed, numerous courts have found bag searches unreasonable under the Fourth Amendment where the suspect was restrained and had no conceivable opportunity to access the bag. *See, e.g.*, *United States v. Leo*, 792 F.3d 742, 750 (7th Cir. 2015) (search of the detainee's bag was unreasonable where, at the time of the search, the detainee's "hands were cuffed behind his back . . ., the officers already had frisked [him] and found no weapons, and the backpack was in [an officer's] hands and no longer in [the detainee's] possession"); *United States v. Allison*, 637 F. Supp. 2d 657, 666 (S.D. Iowa 2009) ("Defendant was handcuffed behind his back, leaning against the rear bumper of the taxicab, while surrounded by three law enforcement officers. Deputy Shepherd testified that Defendant was under control at the time Deputy Hedgecock removed the gym bag from the taxicab. . . . Consequently, the bag presented no concerns for officer safety that would justify a *Terry* search of the bag's contents."), *aff'd*, 454 F. App'x 521 (8th Cir. 2011); *see also Buster*, 26 F.4th at 635; *United States v. Jones*, No. 1:22-cr-00371-ELH, 2023 WL 4627284, at *18–19 (D. Md. July 18, 2023) (suppressing evidence obtained during search of handcuffed and surrounded detainee's bag).

The Fourth Circuit's *Buster* decision is instructive here. Like this case, police in *Buster* responded to a report of domestic violence with word that a gun was involved.

*Buster*, 26 F.4th at 630. After the defendant was handcuffed, officers searched his bag (which was described as "[h]ard to the touch") and found a gun and ammunition. *Id.* The Fourth Circuit rejected the government's argument that the search of the bag was permissible under *Terry*, emphasizing that "quickly frisking an unsecured suspect or a bag during a *Terry* stop is simply not the same as methodically searching the contents of a bag to which a suspect no longer has access—particularly where the suspect remained restrained and under the officers' physical control." *Id.* at 634. The court was also unpersuaded by the government's attempt to justify the search using the officer's belief that the bag had a weapon because it was "hard to the touch": "[E]ven assuming the officer had reasonable suspicion that the bag contained a weapon . . ., that fact alone could not generate reasonable suspicion that [the defendant] was 'presently dangerous' after he was already restrained and no longer had access to the bag." *Id.* at 635 (quoting *Terry*, 392 U.S. at 30). *Terry* does not authorize a search "where there is no realistic danger to officer safety." *Id.*

Like *Buster*, the Government here "offers no explanation for how the contents of the bag presented any credible threat to the officers' safety *at the time they searched it*," *id.* at 634 (emphasis added), and it has not demonstrated that Mr. Jones was *presently* dangerous at the time his bag was searched. *See Terry*, 392 U.S. at 30; *see also Jones*, 2023 WL 4627284, at *18–19 (following *Buster* and suppressing evidence obtained during a search of a bag where the defendant was "handcuffed, with his hands behind his back, and surrounded by three [police] officers" and "posed no realistic danger to officer safety" (quotation omitted)). Instead, the Government focuses on the future possibility that, at the end of the encounter, the bag and its contents would be returned to Mr. Jones. [Doc.

25 at 8–9]. It is here that the Government invokes the vehicle-search principles of *Michigan v. Long*, noting that under that case, "[o]fficers may search [']those areas in which a weapon may be placed or hidden,' including 'the contents of any open or closed container found within the passenger compartment'" of a vehicle. [*Id.* (quoting *Long*, 463 U.S. at 1049)]. *Long* explained that this exception applies whether or not the car is readily accessible to the suspect, because "if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside." *Long*, 463 U.S. at 1052. The Government contends that "[i]f officers may search a closed container inside a car based on reasonable suspicion that the detainee is armed and dangerous, it stands to reason that they may search a closed container outside of a car based on the same reasonable suspicion" because "the same officer-safety concerns—that, if the detainee is not arrested, he will have access to any weapons inside the container—exist" whether the weapon is in a vehicle, like *Long*, or a bag, like here. [Doc. 25 at 9].

The issue with the Government's argument, in the Court's view, is that the Government is required to show that the search fits within a *narrow* and *well-delineated* exception to the warrant requirement. *Flippo*, 528 U.S. at 13. While the argument has practical appeal, the Government has directed the Court to no binding authority that extends *Long*'s holding to non-vehicle searches or that otherwise holds that officers may always search a detainee's belongings before returning them at the end of the *Terry* stop. *See generally* [Doc. 25]. While it argues that the Tenth Circuit's decision in *United States v. Thomson* "extends [*Long*'s] logic to protective searches of bags" to "[hold] that *Terry* allows 'a limited search beyond the person of the suspect' that extends to a detainee's

bag," [*id.* at 9], the Court respectfully disagrees that *Thomson* stands for such a universally broad proposition. In that case, police responded to a report that a company's former employee, who was known to carry a gun, was threatening his former coworkers. *Thomson*, 354 F.3d at 1199. Officers located and interviewed the former employee, and when they asked him if he had any weapons nearby, he responded that there was a weapon in a bag on the floor next to him. *Id.* An officer took the bag and opened it, finding a gun and ammunition. *Id.*

The Tenth Circuit concluded that the officer's search of the bag was justified under *Terry*: "If the police detect a weapon or contraband during a *Terry* search, they are entitled to seize it." *Id.* at 1200. It viewed the circumstances before it similar to a "plain view" or "plain feel" justification for a search, as the officer only opened the bag "after his *Terry* stop investigation," i.e., the questioning, "revealed that [the bag] contained a weapon." *Id.*[7] Notably, the Tenth Circuit expressly disclaimed the defendant's suggestion that approving the search would "impermissibly extend *Terry* to allow a search of any container in the vicinity of the person being questioned," concluding that "[a]llowing [the officer] to open the bag *under these circumstances* d[id] not authorize a broader search." *Id.* at 1200–01 (emphasis added).

---

[7] "A warrantless search can be conducted if law enforcement agents see, within plain view, the contents of a container and it is apparent or a 'foregone conclusion' that such contents are contraband." *United States v. Jackson*, 381 F.3d 984, 989 (10th Cir. 2004). "The same can be said of tactile discoveries of contraband. If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." *Dickerson*, 508 U.S. at 375–76. The Government does not make a plain-feel argument here, and it is undisputed that the officers on scene did not try to pat down Mr. Jones's backpack.

Not only is *Thomson* meaningfully distinguishable on the facts, the Government points this Court to no cases directly applying *Thomson* to hold that a *Terry* frisk necessarily "extends to a detainee's bag," as the Government argues. Nor could this Court independently find any such cases. Two district courts have suggested that *Thomson* is limited to areas within the detainee's immediate control. *See United States v. Richmond*, No. 2:16-cr-00197-WED-PP, 2017 WL 9325882, at *3 (E.D. Wis. Apr. 6, 2017) ("Citing officer safety as rationale, other circuits have extended *Terry* searches to areas within the immediate control of the subject." (citing *Thomson*)), *report and recommendation adopted*, 2017 WL 3701216 (E.D. Wis. Aug. 28, 2017), *aff'd*, 924 F.3d 404 (7th Cir. 2019); *United States v. Smith*, No. 4:11-cr-00288-RWS-1, 2012 WL 1309249, at *5 (E.D. Mo. Mar. 13, 2012) ("The frisk, however, does not have to be limited to the person's body, but also can be of bags or soft luggage that the detainee is carrying or to which he has access." (citing *Thompson*)), *report and recommendation adopted*, 2012 WL 1309463 (E.D. Mo. Apr. 17, 2012), *aff'd*, 715 F.3d 1110 (8th Cir. 2013). And while *Thomson* cites to *Long* for the proposition that a *Terry* stop "is not necessarily limited to a frisk of the person under investigation," *Thomson*, 354 F.3d at 1200, it does not engage with the *future* officer safety concern noted in *Long* and relied on by the Government here. *See generally id.* In other words, *Thomson* goes no further than other cases holding that, based on the circumstances, a *Terry* frisk *may* permissibly include the detainee's bag. But the Court does not read *Thomson* to provide a blanket authorization for the officers' search of Mr. Jones's bag here.

The Government also relies on *United States v. Walker*, 615 F.3d 728 (6th Cir. 2010), to argue that *Long* should apply to non-vehicle *Terry* stops where police are set to

return the detainee's belongings. [Doc. 25 at 11]. However, the statement in *Walker* that the Government relies upon—that when "the only alternative is to give a suspect access to a potential weapon (in an un-searched bag), a *Terry* search for weapons is justified—and reasonable," is dicta. *See Walker*, 615 F.3d at 733–34; *see also United States v. McCraney*, 674 F.3d 614, 620 n.4 (6th Cir. 2012) (the Sixth Circuit describing that portion of the *Walker* opinion as dicta). Furthermore, *Walker* is distinguishable on the facts. The *Walker* court opined that the search of a bag was justified by officer safety concerns because, *at the time of the search*, the suspects "were unrestrained and not yet in custody" and "standing just three feet from the bag at the time of the search," such that officers "by no means had the scene under control or their safety secure." *Walker*, 715 F.3d at 734. These immediate and present safety concerns were not present in this case at the time of the search, when Mr. Jones was restrained 15 feet from his bag.[8]

The Court is persuaded by the Seventh Circuit's decision in *United States v. Leo*, which rejected the same argument raised by the Government here. The *Leo* court first

---

[8] The determinative issue in *Walker* was whether the scope of the search was permissible. *Walker*, 715 F.3d at 731. In *Walker*, an officer searched an "already partially unzipped duffel bag" by "pull[ing] the zipper open further" and observing the bag's visible contents—including a skeleton mask that resembled the description of a recent bank robber's. *Id.* at 730, 732. Based on that search, officers obtained a warrant and searched the remainder of the bag, which yielded additional evidence of the crime. *Id.* at 730–31. The Sixth Circuit emphasized:

> Unzipping the bag more than it was already unzipped was an efficient and expedient way to determine whether a gun lay on the top of the bag, ready for use. After unzipping the bag and looking inside, the officers conducted no further search of the bag until they had a warrant. On this record, it is fair to say that the search was reasonably designed to discover weapons that might pose a threat to the officers' safety, namely weapons lying on the top of the already partially unzipped duffel bag.

*Id.* at 732 (quotation omitted). This even further limits *Walker*'s applicability to this case.

distinguished *Long*, recognizing that Fourth Amendment vehicle cases have long been treated as a unique category of cases, as "the Supreme Court has recognized a diminished expectation of privacy in a car, partly because cars that travel on public roads are subject to 'pervasive regulation,'" and roadside encounters, like the one in *Long*, are "'especially fraught with danger to police officers.'" *Leo*, 792 F.3d at 749–50 (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996); and *Long*, 463 U.S. at 1047, 1049–50). The court then disposed of the government's argument that officer safety concerns justified the search because the detainee, if released, would again have access to his backpack (and potentially a weapon). *Id.* at 750–51. Investigative detentions are necessarily limited in scope and duration, *see id.* at 751, and the Seventh Circuit agreed with the defendant that if the initial justification for the limited stop does not develop into probable cause for an arrest, "the Fourth Amendment demands that [the detainee is] free to leave and take his belongings with him," even if the officers' suspicions are not dispelled. *Id.*

Assuming without deciding that the initial detention of Mr. Jones was reasonable,[9] *Terry* permitted DPD officers to "conduct a carefully limited search" that was no greater than necessary "for the discovery of weapons which might be used to harm the officer or others nearby." *Terry*, 392 U.S. at 30; *Dickerson*, 508 U.S. at 373. Officers did so when they frisked Mr. Jones and found no weapons. Their next step—searching Mr. Jones's backpack while he was handcuffed in the back of the police car, without any opportunity

[9] Because the Court concludes that the Government has not met its burden with respect to the search of Mr. Jones's backpack, it need not—and does not—reach Defendant's alternative argument that his initial stop and detention was unreasonable and in violation of the Fourth Amendment.

to access the bag and without posing any present danger to officers—was "*not* one that is authorized by *Terry* or any other precedent," including *Long*. *Leo*, 792 F.3d at 751.

In sum, the Court concludes that the Government has not met its burden of demonstrating that an exception to the warrant requirement applies to the search of Mr. Jones's bag and that the search was reasonable. Accordingly, the search of Mr. Jones's backpack violated his Fourth Amendment rights. The Motion to Suppress is therefore **GRANTED**,[10] and all evidence seized during the search of Mr. Jones's backpack, including the handgun, is **SUPPRESSED**.

## CONCLUSION

For the reasons set forth above, it is **ORDERED** that:

(1) The Motion to Suppress [Doc. 22] is **GRANTED**;

(2) All evidence seized from the search of Mr. Jones's bag, including the handgun, is **SUPPRESSED**; and

(3) On or before **May 1, 2024**, the Parties shall meet and confer with respect to the requirements of the Speedy Trial Act and shall file a joint status report setting forth their position(s) as to the applicable Speedy Trial Act calculation. After receiving the status report, the Court will re-set this case for trial.

DATED: April 24, 2024

BY THE COURT:

Nina Y. Wang
United States District Judge

[10] The Government does not argue that an exception to the exclusionary rule applies. *See* [Doc. 25].